GUIDRY, Judge.
Plaintiffs, William D. Dyess, Miriam Hardy Dyess, and Darryl Allen Dyess, instituted this action to remove a cloud from title and for a declaratory judgment. Made defendants in the suit were Lillie Beth Webb Horton and Huey Raydine Horton. Plaintiffs sought to have two acts of sale, one executed to Lillie Beth Webb Horton, as vendee, and the other executed by Lillie Beth Webb Horton, as vendor, to Huey Raydine Horton, as vendee, decreed null and void.
The trial court found in favor of plaintiffs and decreed the two deeds in question to be absolute nullities.[1] Defendant, Huey Raydine Horton, appeals from that judgment.
FACTS
The record discloses that the entirety of the property described in the deeds in question was formerly owned by Isaac Clifton Horton and his wife, Nena Fancher Horton, now both deceased. Gladys Horton Fine, Lilia Horton Parker, Huey P. Horton and John L. Horton were the only children and sole heirs of Isaac and Nena Horton. They were placed in possession of their parents’ property by virtue of a judgment of possession dated May 4, 1978. By virtue of this recorded judgment, each child received an undivided one-fourth interest in the following described property:
“That certain tract of land, together with all buildings and improvements located thereon, situated in Sabine Parish, Louisiana, and being more particularly described as follows, to wit:
The East Three-Fourths (¾) of the Southeast Quarter (SE1/*) of the Southeast Quarter (SEV-i) of Section Twenty-two (22), Township Eight (8) North, Range Thirteen (13) West; and
Eleven (11) acres off the West side of the Southwest Quarter (SWVi) of the Southwest Quarter (SWV4) of Section Twenty-three (23), Township Eight (8) North, Range Thirteen (13) West;
Containing 41 acres more or less, situated in Sabine Parish, Louisiana.”
On December 20, 1978, Lilia Horton Parker sold all of her undivided one-fourth interest in the above described property to Wilma Jean Parker Brevelle, wife of B.F. Brevelle. On June 7, 1983, the Brevelles sold to plaintiffs herein all of their right, title and interest in the property in question. On the latter date, Gladys Horton Fine also sold to plaintiffs all of her right, title and interest in said property.
*1027 On July 29, 1983, Huey P. Horton conveyed to plaintiffs all of his right, title and interest in the property in question. By virtue of the recorded conveyances aforementioned, plaintiffs, as of July 29, 1988, owned at least a three-fourths undivided interest in the property.
By deed dated December 27, 1979, John L. Horton sold all of his interest in the subject property to his wife, Lillie Beth Webb Horton. This sale was recorded in the conveyance records of Sabine Parish on December 27, 1979 in Conveyance Book No. 318, page 784, and bears act No. 247776. Lillie Horton subsequently sold the interest in the property acquired as aforestated to Huey Raydine Horton on June 23, 1983, reserving for herself a life usufruct over the premises conveyed.
Plaintiffs, as successors in title of Gladys, Lilla and Huey P. Horton, filed suit seeking to have the sales from John Horton to his wife, Lillie, and from Lillie Horton to Huey Raydine Horton declared null and void. In support of their claim, plaintiffs contend that at the time of execution of the initial sale between John and Lillie Horton, 1.e., December 27, 1979, a husband could not validly sell immovable property to his wife. Article 2446 of the Louisiana Civil Code of 1870 (now repealed). Plaintiffs thus argue that since the initial sale was invalid, the subsequent sale from Lillie Horton to Huey Raydine Horton conveyed no title. Plaintiffs further asserted that since the deed from John to Lillie is invalid, John Horton died as the owner of a one-fourth interest in the property, without having any forced heirs and, therefore, his one-fourth interest in that separate property devolved to his brother and sisters in accordance with the law in effect at that time. Thus, presumably, plaintiffs contend that they became vested with John’s one-fourth interest by virtue of the sales to them by John’s collateral heirs or their successors of “all interest” in the property in question.
Plaintiffs filed the instant suit on August 24, 1983, naming as defendants Lillie Beth Webb Horton and Huey Raydine Horton. A curator ad hoc was appointed to represent Huey Raydine Horton, who was domiciled in Waco, Texas at the time. The curator answered the suit with a general denial. No answer was filed on behalf of defendant, Lillie Beth Webb Horton, and no preliminary default was ever entered against her. The case was submitted on memoranda.
By judgment dated March 12, 1984, the trial judge found in favor of plaintiffs and decreed the two sales in question to be absolute nullities, ordering them erased and cancelled from the conveyance records of Sabine Parish. The trial judge did not, however, declare plaintiffs to be the owners of John Horton’s one-fourth interest in the property in question. Plaintiffs were cast with all costs of the proceedings.[2]
Through his curator ad hoc, defendant, Huey Raydine Horton, moved for a new trial on the ground that the judgment was clearly contrary to the law and the evidence. After a contradictory hearing held on April 16, 1984, this motion was denied. Defendant, Huey Raydine Horton, appealed the trial court’s judgment.[3]
The sole issue presented on appeal is whether the trial court committed clear error in holding that the sales in question were null and void because Articles 1790 and 2446 of the Louisiana Civil Code of 1870 were still in effect at the time of the sale from John Horton to his wife, Lillie.
At the outset, we observe that we seriously question whether, under the present record, plaintiffs have established a right of action in themselves to question the validity of the sales from John Horton to *1028 Lillie Horton and from Lillie Horton to Huey Raydine Horton. There is nothing in the record establishing the date of John Horton’s death and whether John Horton died testate or intestate. Additionally, plaintiffs could not have acquired any rights or interest in the property possibly inherited by Lilia Horton Parker from her brother, John Horton, since Lilia conveyed to Wilma Jean Parker Brevelle only her undivided one-fourth interest in the property in question. Therefore, plaintiffs could not have acquired a greater interest in the property than Brevelle acquired. Although it is possible that Brevelle was the sole heir of Lilia Horton Parker and acquired John Horton’s interest in the property by way of representation, there is nothing in the record to substantiate such theory.
Because we find, for the reasons hereafter stated, that the questioned deeds were legally and validly executed in accordance with the law in effect on the date of their confection, we pretermit any further discussion of the issue concerning whether plaintiffs have established their right to prosecute this action.
INTERSPOUSAL INCAPACITY TO CONTRACT
The sole basis for the trial court’s annulment of the sales in question is that at the time of the sale from John Horton to Lillie Horton, i.e., December 27, 1979, such transaction was prohibited by Article 2446 and Article 1790 of the Louisiana Civil Code of 1870.[4]
Defendant contends that the trial judge erred in that the prohibitions against inter-spousal sales and contracts were removed by Act 627 of the Louisiana Legislature of 1978 which became effective on September 7, 1979. Therefore, at the time of the sale between John and Lillie Horton, there no longer existed any impediment to such sale.
Plaintiffs take a contrary position on appeal urging that the repeal of Article 2446 and the amendment to Article 1790 did not become effective until January 1, 1980 by way of Acts 709 and 711 of the Louisiana Legislature of 1979.
In his written reasons for judgment dated March 12, 1984, the trial judge addressed these arguments as follows:
“The issue to be decided herein, then, is whether Act 627, Louisiana Legislature of 1978 should be applied in this case. Clearly, Acts 709 and 711, would not apply since the effective dates of those acts is January 1, 1980 and the date of the deed in question was December 27, 1979. Furthermore, there is no contention or showing that those acts should be given retroactive application in this, or any other case.
The provisions of Act 627 of 1978 repealing Article 2446 and amending Article 1790, by deleting interspousal contractual incapacity from that article, were assigned an effective date of the sixtieth (60th) day after final adjourn *1029 ment of the 1979 Regular Session, which was September 7, 1979. However, before that effective date arrived, Act 627 of 1978 was repealed in its entirety by Section 5, of Act 709 of 1979. Thus, Act 627 of 1978 never became effective and the incapacity of spouses to contract with each other declared by Article 1790 was removed, not by that act, but by Act 711 of the Louisiana Legislature of 1979, with an effective date of January 1,1980, which is after the December 27, 1979 date of the interspousal deed in question. (See Freeman Vs. Freeman, 430 So.2d 673, La.2d Cir.Ct. of App., 1983, at Pages 678 and 679; Acts, State of Louisiana, 1979, Vol. II, Pages 1885 and 1886; Page 1893; 1897; and, 1908; and, Acts, State of Louisiana, 1978, Vol. II, Pages 1600 and 1601.). Therefore, the incapacity of spouses to contract with each other, under Article 1790, was in full force and effect as of the date of this interspousal deed.

Article 2446 of the Civil Code, before its repeal by Act 709 of 1979, provided some exceptions to the general rule that spouses were incapable of contracting with each other. Since its repeal in Act 627 of 1978 never went into effect, and the repeal of the article in Act 709 of 1979 did not go into effect until January 1, 1980, the article was in full force and effect as of December 27, 1979, the date of the interspousal deed herein. However, the interspousal deed has not been shown to come within any of the exceptions of the former Article 2446.”
The trial judge further concluded that since there was no evidence that the inter-spousal deed was ratified subsequent to the repeal of the pertinent articles, the sale between the Hortons was null and void. Finally, the trial judge determined that since Lillie Horton never acquired ownership of the disputed property, she was incapable of transferring any interest therein to Huey Raydine Horton. Therefore, the trial judge found that sale also to be invalid.
We disagree with the trial court’s conclusion that Act 627 of 1978 never became effective and reverse.
Section 3 of Act 627 provided for the amendment of Civil Code Article 1790 which prohibited spouses from entering into contracts with one another. The amended Article 1790 was reenacted to read as follows:
“Besides the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contract, such as purchases, by the administrator, of any part of the estate which is committed to his charge.- These take place only in the cases specially provided by law, under different titles of this Code.”
Section 5 of Act 627 repealed former Civil Code Article 2446 in its entirety. These provisions were designated to take effect on the 60th day after final adjournment of the 1979 Regular Session, i.e., September 7, 1979.
Act 709 of 1979, Section 2, expressly repealed Civil Code Article 2446. Section 5 of that same Act repealed Act 627 of 1978 in its entirety. Section 13 of Act 709 provided that the effective date of the provisions of sections 1 through 9, among other sections, of the act was to be January 1, 1980. Act 711 of 1979 amended and reenacted Civil Code Article 1790 to read as follows:
“Besides the general incapacity that persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contracts, such as purchases, by the administrator, of any part of the estate committed to his charge. These take place only in the cases specially provided by law, under different titles of this Code.”
*1030 As can be seen, only stylistic changes were made in Article 1790 from Act 627 of 1978 to Act. 711 of 1979. No substantive changes were made in the newly amended article which no longer prohibited spouses from contracting with each other. As provided in Section 8 of Act 711, the provisions of that act became effective on January 1, 1980.
When the three acts referred to are considered in pari materia, it is made obvious that the legislature clearly intended the repeal of La.C.C. Art. 2446 and the amendment of La.C.C. Art. 1790 by Act 627 of 1978 to be effective September 7, 1979 and to continue in effect until provisions to the same effect contained in Acts 709 and 711 of 1979 became effective, such that commencing September 7, 1979 the prohibition against interspousal agreements was eliminated.
Section 13 of Act 709 of 1979 provides as follows:
“Section 13. Effective date of provisions of Act
Sections 10 and 13 of this Act shall be effective on August 1, 1979. Sections 1 through 9, 11 and 12 of this Act shall be effective on January 1, 1980.”
Had the legislature intended by Act 709 of 1979 to repeal Act 627 of 1978 prior to its effective date, it would have been a simple matter to so provide. However, to the contrary, the legislature provided that the repeal of Act 627 of 1978, set forth in Section 5 of Act 709 of 1979, should not be effective until January 1, 1980. Thus, we conclude that the provisions of Act 627 of 1978 became effective September 7, 1979 and continued in effect until January 1, 1980. Therefore, the act of sale from John L. Horton to his wife, Lillie Beth Webb, at issue in this matter, is not void as a prohibited interspousal deed, having been executed subsequent to the repeal of La.C.C. Art. 2446 and the amendment to La.C.C. Art. 1790. The trial court clearly erred in holding otherwise.
The trial judge relied on Freeman v. Freeman, 430 So.2d 673 (La.App. 2d Cir.1983), writ denied, 435 So.2d 449, 450 (La.1983), in concluding that Act 627 of 1978 never became effective. In Freeman, Mrs. Freeman appealed the trial court's rejection of her demands to be recognized as the owner of an undivided one-half interest in property acquired by her husband following a reconciliation by the couple. The Freemans had been judicially separated in September of 1972. They reconciled several months later but did not execute an authentic act re-establishing the community property regime as was required at the time by La.C.C. Art. 155. They separated again in 1980 and were subsequently divorced. One of the arguments utilized by Mrs. Freeman in support of her contentions was that she acquired an undivided interest in the property by way of a joint venture agreement between herself and Mr. Freeman. The trial and appellate courts rejected this argument on the basis that joint ventures can only be created by the consent of the parties and the evidence did not establish that the Freemans consented to engage in a joint venture. In dicta, the appellate court went on to add the following:

Furthermore, such an agreement or contract between the spouses was prohibited by LSA-C.C. Art. 1790,2 as it read prior to its amendment by Act 627 of 1978 which never became effective and Act 711 of 1979, which repealed Act 627 of 1978 and became effective January 1, 1980.”
We view the quoted language as dictum, however, to the extent that our learned brethren of the Second Circuit may have intended the pronouncement that Act 627 of 1978 never became effective as precedent, we respectfully disagree with such pronouncement for the reasons heretofore stated.
For the above and foregoing reasons, the judgment of the trial court annulling the sales between John and Lillie Horton and Lillie Horton and Huey Raydine Horton is hereby reversed. It is hereby ordered, adjudged and decreed that there be judgment *1031 in favor of defendant, Huey Raydine Horton, dismissing plaintiffs’ suit against him.
Costs at the trial level, including the fee of the curator ad hoc, and on appeal are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.

. The record reveals that defendant, Lillie Beth Webb Horton, is a resident of Louisiana, and we assume that proper service of process was made upon her. However, Lillie Horton never filed an answer in the present suit. Since the record fails to reveal that issue was joined as to Lillie Beth Webb Horton, the trial court’s judgment, insofar as it affects her rights, is an absolute nullity. A judgment cannot be rendered against a defendant who has never answered and has never made a general appearance in the absence of the entry of a preliminary default. Bickford v. Lutz, 339 So.2d 1268 (La.App. 1st Cir.1976).

. As was discussed in footnote no. 1, that part of the judgment which affects the rights of Lillie Beth Webb Horton is an absolute nullity.

. Defendant filed a suspensive appeal and the bond therefor was set at 12500.00. The suspen-sive appeal bond was never posted by defendant. Since appeal bonds are no longer required for devolutive appeals under La.C.C.Pr. Art. 2124, and defendant has fulfilled all of the requirements for a devolutive appeal, this appeal is considered as devolutive in nature.

. Article 2446 prior to its repeal provided:
"Art. 2446. A contract of sale, between husband and wife, can take place only in the three following cases:
1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.
3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry.
Saving, in these three cases, to the heirs of the contracting parties, their rights, if there exist any indirect advantage.”
Article 1790 prior to its amendment provided:
"Art. 1790. Besides the general incapacity which persons of certain descriptions are under, there are other applicable only to certain contracts, either in relation to the parties, such as a husband and wife, tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contract, such as purchases, by the administrator, of any part of the estate which is committed to his charge, and the incapacity of the wife, even with the assent of the husband, to alienate her dotal property, or to become security for his debts. These take place only in the cases specially provided by law, under different titles of this Code.”